CIRILLO, Judge:
Shawn A. Kroh (Father) appeals from an order of child support entered in the Court of Common Pleas of York County. We vacate the order and remand for a new hearing.
On January 27,1992, appellee Dawn M. Klahold (Mother) filed a complaint for child support against Father for the parties’ infant son, Jared Z.G. Klahold (Jared), born out-of-wedlock[1] on December 29, 1991. Pa.R.C.P. 1910.26. The Honorable Michael J. Brillhart ordered Father and Mother to attend a support conference on February 24, 1992, before a Hearing Officer of the Domestic Relations Section. Pa.R.C.P. 1910.11. On that date, however, Father entered notice with the court denying paternity and requesting a jury trial on the issue. After approximately one and one-half years of discovery, Father filed an acknowledgment of paternity and waived his right to a jury trial. Judge Brillhart, by an order dated May 27, 1993, accepted Father’s acknowledgment of paternity and waiver. Judge Brillhart then rescheduled the support conference for July 23, 1993.
At the support conference, the Hearing Officer determined that Mother had a net earning capacity of $652.13 per month, while Father had a net earning capacity of $1,568.09 per month. Applying these figures to the Pennsylvania Support Guidelines, Pa.R.C.P. 1910.16-1 et seq., the Hearing Officer recommended that Father be ordered to pay $291.00 per month in child support for Jared, plus $22.00 per month in arrearages. Judge Brillhart adopted the Hearing Officer’s *154 recommendations and entered a temporary order on the same date. The order was made effective January, 1992, the month in which Mother filed the underlying complaint for child support. Pa.R.C.P. 1910.17(a). Within 10 days of the entry of the order, Father filed exceptions to the order, Pa.R.C.P. 1910.12(e), and Judge Brillhart scheduled a hearing for November 1, 1993. On December 20, 1993, after the hearing, Judge Brillhart entered a final order, affirming the temporary order entered at the support conference. Father filed this timely appeal and presents three issues for our consideration:
(1) Is it an error of law and an abuse of discretion for a trial court to make a support action retroactive to the date of filing, where a contest of paternity was initiated at the same time as the filing, and where the earning capacity of the obligor was abnormally high at the earlier date?
(2) Is it an error of law and a manifest abuse of discretion for a trial court to enter a support order that is confiscatory to the extent of allocating 76 percent of an obligor’s net monthly income to child support, and which is entered absent any independent discussion of the court’s analysis of the specifics of the case, the earning capacity of the custodial parent, or the living expenses of the obligor?
(3) Is it an error of law and an abuse of discretion for the trial court to enter a support order that explicitly violates the provision of Pa.R.C.P. 1910.16-3, by departing upwards from the guidelines set forth therein by over 100 percent, when the court alleges no special or unique circumstances which justify doing so?
Our scope of review in child support cases is well settled. We will not disturb a child support order absent an abuse of discretion, resting upon clear and convincing evidence. Kelly v. Kelly, 430 Pa.Super. 31, 32-34, 633 A.2d 218, 219 (1993). An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable. Id.
*155 It is also well established that both parents are equally responsible for the support of their children. Id. (citing DeMasi v. DeMasi, 366 Pa.Super. 19, 530 A.2d 871 (1987)). While the guidelines largely base the amount of support on actual, monthly net income, Pa.R.C.P. 1910.16-5(b), the trial court may nevertheless view earning capacity as the primary focus in determining ability to pay support, at least where the question of a parent’s earning capacity is raised. Kelly, 430 Pa.Super. at 32-34, 633 A.2d at 219 (citing Akers v. Akers, 373 Pa.Super. 1, 540 A.2d 269 (1988); see also Perlberger v. Perlberger, 426 Pa.Super. 245, 626 A.2d 1186 (1993); Singleton v. Waties, 420 Pa.Super. 184, 616 A.2d 644 (1992).
Once monthly net income or earning capacity is determined, the trial court calculates the amount of child support to be awarded, based upon the support guidelines set forth in Pennsylvania Rule of Civil Procedure 1910.16. Although the use of the support guidelines, including the grids[2] and the formula,[3] supplants the requirement that the trial court place on the record its child support calculations, we still require that the trial court set forth on the record an explanation as to how it arrived at the figures regarding the parties’ net incomes and/or earning capacities. Lesko v. Lesko, 392 Pa.Super. 240, 572 A.2d 780 (1990).
In this case, the Hearing Officer and trial court attributed a net earning capacity to Father of $1,568.09 per month. At the November 1, 1993 hearing, the Hearing Officer stated that she based Father’s earning capacity solely upon Father’s employment with Super Rite Foods one year prior to the support conference, when Father earned $11.72 per hour. Father was terminated from that job in June of 1992 because of an altercation with a co-employee. Since that termination, Father’s hourly wage has not exceeded $5.25 per hour. Nonetheless, because of Father’s termination from Super Rite Foods, the Hearing Officer calculated Father’s earning capacity based on the wages that Father received from Super Rite *156 Foods over one year prior to the support conference. At the November 1st hearing, the Hearing Officer testified that, “[Father] informed me ... [that] he was terminated for cause through fault of his own from Super Rite Foods. And, therefore, he was held to that earning capacity.” N.T. at 24-25.
In its opinion, the trial court based the earning capacity attributed to Father on the following subsection of Rule 1910.16-5 of the Pennsylvania Rules of Civil Procedure:
(c) Reduced or Fluctuating Income.
(1) Voluntary Reduction of Income. Where a party voluntarily assumes a lower paying job, there generally will be no recomputation of the support payment. A party ordinarily will not be relieved of a support obligation by voluntarily quitting work or by being fired for misconduct.
Pa.R.C.P. 1910.16 — 5(c)(1) (emphasis added to text of subsection (1)).
Because the amount of support may be based upon earning capacity, less reasonable living expenses, steps taken to reduce income for the purpose of avoiding or decreasing support are ineffective, insofar as diminishment of the support obligation is concerned. Grimes v. Grimes, 408 Pa.Super. 158, 159-63, 596 A.2d 240, 241-42 (1991). In line with this principle, this court has stated that:
a parent may not intentionally reduce his or her earnings and then use the reduction in earnings to obtain a reduction in the amount of support which that parent must provide for his or her children; ... (citations omitted). The rationale underlying these decisions is that a parent has a duty to his or her children and therefore a parent should not be permitted to evade that responsibility by deliberately reducing his or her income.
Roberts v. Bockin, 315 Pa.Super. 52, 55, 461 A.2d 630, 632 (1983); see also Grimes, supra; Coffey v. Coffey, 394 Pa.Super. 194, 575 A.2d 587 (1990).
Father concedes that he was terminated from Super Rite Foods approximately one year prior to the support hearing because of an altercation with a fellow employee. Although he *157 earned $11.72 per hour at Super Rite Foods, since his termination from that job, he has not been able to secure employment with a wage in excess of $5.25 per hour. There is nothing in the record, however, to indicate that Father “deliberately reduced” his income to intentionally avoid his future child support obligation. Roberts, supra; Grimes supra; Coffey, supra.
Furthermore, we find that the hearing officer’s and trial court’s reliance on Rule 1910.16-5(c) is misplaced. The language of Rule 1910.16-5(c) seems clear that it only applies to cases where an initial support order has already been entered and, because of some kind of a voluntary reduction of income since the entry of the initial order, the obligor now seeks to have his or her support “obligation recomputat[ed].” Pa.R.C.P. 1910.16 — 5(c)(1). In fact, all of the cases citing new Rule 1910.16 — 5(c)(1), including one cited by the trial court, concern petitions to modify preexisting support orders, not cases, such as this, concerning the calculation of initial support orders. See Young v. Muthersbaugh, 415 Pa.Super. 591, 609 A.2d 1381 (1992); Paulus v. Paulus, 413 Pa.Super. 230, 604 A.2d 1103 (1992); Grimes, supra. The trial court even acknowledges this proposition in its opinion: “[B]efore being relieved of an [sic] prior earning capacity, the petitioning party must show that a reasonable effort was made to be reemployed at the best and highest wages.” Again, this case does not involve a preexisting support order and, therefore, Rule 1910.16-5(c)(1) is not applicable. We find, therefore, that the trial court erred in basing Father’s earning capacity solely on his job with Super Rite Foods.
We do not mean to suggest that a trial court is not permitted to run an individual’s earning capacity through the guidelines’ grids or formula to ascertain his or her support obligation. Kelly, supra. To the contrary, earning capacity will be used when a party willfully fails to obtain “appropriate” employment. Pa.R.C.P. 1910.16-5(c)(5). Factors which shall be considered in determining earning capacity are: age; education and/or training; health; work experience; earnings history, etc. Id.; Perlberger, 426 Pa.Super. at 281-83, 626 *158 A.2d at 1206. In light of this standard, we vacate the existing support order and remand the case for a new hearing to calculate both Mother and Father’s actual incomes and/or earning capacities, and to apply those figures to the support guidelines.[4]
Order vacated and case remanded for a new hearing consistent with this opinion. Jurisdiction relinquished.[5]
ROWLEY, P.J., concurs in the result.
DEL SOLE, J., files a concurring and dissenting Opinion.

. We note that the fact that Jared was born out-of-wedlock has no bearing on either parent’s child support obligations. Due process requires that such children be treated the same as children born during marriage. See Branch v. Jackson, 427 Pa.Super. 417, 629 A.2d 170 (1993) (citing 23 Pa.C.S.A. § 5102(a)).

. Pa.R.C.P. 1910.16-2.

. Pa.R.C.P. 1910.16-3.

. In formulating the parties’ respective support obligations, in addition to the incomes/eaming potentials of the parties, the trial court must also take into consideration Father's preexisting support obligation in the amount of $30.00 per week to his son in Perry County, the fact that he is currently married and supports an infant bom of that marriage, and other applicable factors listed in the guidelines.

. Because we vacate the support order and remand the case for a new hearing, we need not address Father’s remaining contentions on appeal.