Janine A. NEIL, Appellee,

v.

Gregg A. NEIL, Appellant.

Superior Court of Pennsylvania.

Argued March 24, 1999.
Filed May 18, 1999.

Joanne Ross, Pittsburgh, for appellant.

Steven R. Wolf, Canonsburg, for appellee.

Before DEL SOLE, JOYCE and BECK, JJ.

BECK, J.:

¶ 1 In this support matter, we decide, inter alia, that Pa.R.Civ.P.1910.16–5(c)(1) relating to "Voluntary Reduction of Income" is applicable whether or not a prior support order has been issued. Appellant/Husband challenges the order of the trial court commanding him to pay $5,748.00 per month in spousal and child support. We affirm in part, reverse in part and remand for further proceedings.

¶ 2 Husband and Wife were married in 1985. The parties agree that throughout the marriage, Wife handled the family finances in all respects. Husband was the only wage earner; Wife took care of the couple's four children and their home.[1]

¶ 3 Husband is a sheet metal worker and member of the sheet metal worker's union. For his entire career, he has worked in his family's business, Environmental Air, Inc. Over the years, Husband's parents gifted to him and his brother numerous shares of stock in the company. By 1997, the siblings each owned 2,414 shares. Husband not only received a salary of about $75,000.00 annually, he also received periodic distributions from the company. Some of the money from these distributions was used to cover quarterly tax payments due by Husband on account of the company's tax status as a subchapter S corporation; the remainder was used by the parties for household expenses and savings.

¶ 4 According to Wife, the company distributions exceeded the amount of taxes due by about $120,000.00 per year. Husband testified that the annual excess was much less, only about $20,000.00.

¶ 5 In January of 1997, Husband began to exert control over the family finances. Instead of giving Wife his entire check, he deposited only a portion of it into their joint account. With respect to the company distributions, Husband gave to Wife only those funds that were necessary to cover the quarterly tax liabilities. The marital relationship began to degenerate over the next several months. In April, Wife liquidated a certificate of deposit, without Husband's knowledge, worth about $15,000.00. She used the funds for clothes, vacation, her parents' birthdays, gifts to the children and attorneys' fees.

¶ 6 In June, without Wife's knowledge, Husband sold all of his stock back to the company for an aggregate sum of $277,-610.00, payable over five years. In October, the parties separated and Wife sought the support at issue here.

■ ¶ 7 Our standard of review is well settled. We must affirm unless the evidence is insufficient to sustain the award or the court overrides or misapplies the law or exercises manifestly unreasonable judgment. *Klahold v. Kroh*, 437 Pa.Super. 150, 649 A.2d 701, 703 (1994).

¶ 8 At a hearing before the Hearing Officer, Wife testified that the income from Husband's job, including his salary and the quarterly distributions, amounted to approximately $296,000.00 in 1995 and $297,-000.00 in 1996. Wife offered bank statements in support of her testimony and made calculations and summaries based on the amount of money she deposited into the family bank accounts and the checks she wrote therefrom. After calculating payments for taxes and life insurance policies,[2] Wife estimated Husband's 1995 supplemental monthly income from company

---

1. When the couple married, Wife already had one son from a previous relationship. Husband adopted the child, who is now emancipated. The couple has three children of their own.

2. Wife testified that she also received checks from her mother-in-law which were earmarked for the payment of insurance policies on her father-in-law's life. Husband was one of three beneficiaries on the policies. At the time of the hearing, Husband's father had passed away and Husband was entitled to one-third of the two million-dollar value on the policies.

distributions at $11,674.67. This amount did not include Husband's salary. For 1996, Wife testified that the supplemental monthly distribution income was $9,711.67.

¶ 9 As noted above, Husband testified that the company distribution amounts were about $4,000.00 to $5,000.00 per quarter. However, he offered no evidence in support of this claim and testified that Wife controlled the finances and maintained all the paperwork. With respect to the recent sale of his company stock, Husband testified that his brother told him that it would be better if one person owned the company. Husband then agreed to sell all of his stock back to the company. As a result of the sale, Husband no longer receives company distributions and his income is limited to his annual salary of about $75,000.00. It is this amount that Husband asked the Hearing Officer to consider when setting his support obligation.

¶ 10 In her findings and recommendation, the Hearing Officer specifically found Wife's testimony credible. With respect to Husband's testimony regarding the sale of the company stock, she found it "unpersuasive." She found that Husband could offer no significant reason why he agreed to the sale and further found that the sale was a voluntary act that had the effect of reducing Husband's income available for support purposes. Because the sale occurred after marital troubles began and just before Wife sought support, the Hearing Officer included the company distributions when calculating Husband's income and accepted Wife's calculations in this regard.[3]

¶ 11 The Hearing Officer explicitly found that Husband's cash flow was established by the testimonial and documentary evidence offered by Wife. The trial court found no error in the Hearing Officer's proposed resolution of the case and adopted her recommendations. The matter is now before us on appeal.

¶ 12 Husband argues that the court erred in accepting the Hearing Officer's recommendation. He claims that the court's conclusion that he engaged in a "voluntary reduction of income to avoid support" is not only incorrect, it is inappropriate, because such a principle is applicable only where there exists an outstanding order of support. Because he accomplished the stock sale prior to Wife's request for support, Husband insists that he cannot be deemed to be avoiding his support obligation. Instead, he argues, an order of support must be in place prior to finding an "avoidance" of same.

¶ 13 In support of his argument, Husband draws our attention to the Rules of Civil Procedure, which provide, in pertinent part:

Where a party voluntarily assumes a lower paying job, there generally will be no recomputation of the support payment. A party ordinarily will not be relieved of a support obligation by voluntarily quitting work or by being fired for misconduct.

Pa.R.Civ.P. 1910.16–5(c)(1).

¶ 14 Husband also relies on *Klahold, supra*, wherein Rule 1910.16–5(c)(1) was held to apply only to cases "where an initial support order has *already been entered* and, because of some kind of a voluntary reduction of income since the entry of the initial order, the obligor now seeks to have his or her support 'obligation *recomputat[ed] [sic].'* " *Id.* at 704 (emphasis supplied).

¶ 15 Husband insists that the court applied Rule 1910.16–5(c)(1) in the same improper manner as the trial court in *Klahold*. He argues that our opinion in *Klahold* prohibits application of the Rule in the absence of a preexisting support order. We note however that the reasoning set out in *Klahold* is not binding on us as it did not command a majority of the panel. Instead, one judge concurred in the

---

**3.** The Hearing Officer rejected husband's assertions that Wife mishandled the couple's finances. Instead, she attributed the couple's

significant assets and lack of debt not only to the frequent company distributions, but also to Wife's financial acumen.

result and another explicitly stated that Rule 1910.16–5 indeed may be utilized against an obligor seeking to avoid support that has yet to be reduced to a court order. While the dissenting judge in *Klahold* agreed that the obligor did not deliberately reduce his income, he rejected the lead opinion's reasoning with respect to the "narrow" application of Rule 1910.16–5:

> [There] is no reason to preclude its [Rule 1910.16–5(c)(1)] application in cases where it is the first time that a support order is being entered. Such reasoning [that the Rule applies only to extant orders of support] implies that a person who already has a support order cannot voluntarily quit work to obtain a reduction in the support obligation; but, a person anticipating the entry of the initial support order, can willfully obtain a lower paying job to deliberately reduce the obligor's income without being held to the previous higher earning capacity.... I think a more liberal construction of Rule 1910.16–5(c) is appropriate, and I would not limit its application as the Majority has today.

*Id.* at 705 (Del Sole, J., concurring and dissenting).

■ ¶ 16 Because the third judge on the *Klahold* panel merely concurred in the result reached by the lead opinion, its reasoning is not binding and we are free to find that Rule 1910.16–5(c)(1) is applicable where, as here, the court finds a deliberate attempt to reduce income for purposes of anticipated support proceedings. Like our colleague Judge Del Sole, we conclude that such an interpretation is appropriate.

■ ¶ 17 Further, even if we were bound by the principle Husband espouses, we would in any event affirm the trial court. In all instances, a court is authorized to calculate income potential/earning capacity. *See Rock v. Rock*, 385 Pa.Super. 126, 560 A.2d 199, 202 (1988) (earning capacity, not actual earnings, determines support). *See also* Pa.R.Civ.P.1910.16–5(c)(5) (party who willfully fails to obtain appropriate employment will be considered to have an income equal to his or her earning capacity). It is clear from this record that the Hearing Officer and the trial court believed that Husband's significantly reduced income did not adequately reflect his earning capacity. Instead, the stock sale constituted a ploy that had the effect of depriving Husband's spouse and children of adequate support.

■ ¶ 18 Because the record includes ample evidence supporting these findings, and because these findings are based, in part, on credibility determinations this court is not empowered to second-guess, we conclude that there was no error on the part of the trial court in adopting the Hearing Officer's recommendations.[4]

■ ¶ 19 We further find no error on the part of the trial court in accepting Wife's testimony regarding most of the items she listed as reasonable needs and expenses. *See Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991, 995 (1984) (support order to be consistent with parties' standard of living). This is particularly true in light of Husband's failure to establish anything to the contrary by way of either testimonial or documentary evidence, as well as the Hearing Officer's explicit finding that Wife's testimony was credible and Husband's was not.

■ ¶ 20 However, the record does reveal an error on the part of the court, that is, the failure to account properly for medical insurance costs. Wife testified that

---

4. Husband argues that the trial court improperly relied on the Hearing Officer's findings and failed to conduct its own inquiry as required under the applicable law. We disagree. The court is not required to hold a second full hearing simply because a party files exceptions to the Report and Recommendation. All that is necessary is an independent review by the trial court and a finding that the record adequately supports the findings and recommendation. *Kohl v. Kohl*, 387 Pa.Super. 367, 564 A.2d 222, 224 (1989). The trial court satisfied this standard, as is obvious from its opinion.

Husband's company policy provides health insurance for her and the couple's minor children. Nonetheless, Wife listed health insurance costs as an expense. The court ordered Husband to continue to provide medical insurance, but failed to subtract that item from Wife's expense sheet. This was error and so we remand for correction by the court. At the same time the court makes this correction, it should also consider whether and to what extent Wife's claimed expenses should be further reduced in light of her testimony that her projected expenses were based on Husband and the couple's emancipated son living in the residence. Wife conceded that her actual expenses would be less since the two no longer live with her.

¶ 21 On remand the trial court may, in its discretion, hold an additional hearing, require supplemental briefs or simply review the current record to arrive at its decision.

¶ 22 Finally, we find no error in the court's attributing only a minimum wage earning capacity to Wife who has for the entirety of the marriage worked solely in the home caring for the couple's children.[5] *See Frankenfield v. Feeser*, 449 Pa.Super. 47, 672 A.2d 1347, 1352 (1996).

¶ 23 Order affirmed in part, reversed in part and remanded for further proceedings. Jurisdiction relinquished.

---

5. Wife testified that she last held a job in 1984 and earned approximately $5.00 per hour.