**Rosemary N. HAENTJENS, Appellee**

**v.**

**Richard Peter HAENTJENS, Appellant**

**Rosemary N. Haentjens, Appellant**

**v.**

**Richard Peter Haentjens, Appellee**

Superior Court of Pennsylvania.

Argued April 14, 2004.
Filed Oct. 15, 2004.

---

---

Thomas L. Kennedy, Hazleton, for Richard Haentjens.

Samuel L. Andes, Lemoyne, for Rosemary Haentjens.

Before: BENDER, McCAFFERY, and TAMILIA, JJ.

MCCAFFERY, J.

¶ 1 The parties to these consolidated appeals[1] have asked us to determine whether the trial court utilized the proper method of valuation to best calculate the appreciation on certain inherited property. In addition, we are also called upon to review both an alimony award and an order regarding alimony *pendente lite* ("APL"). We hold that the trial court did utilize the most appropriate valuation method to calculate the appreciation, and also acted properly in reinstating APL. Further, we conclude that as there is an inconsistency between the court's order and its opinion concerning what appears to be an award of alimony, the trial court must address and clarify this inconsistency. Accordingly, we affirm the June 23, 2003 order in part and vacate and remand in part. We also affirm the court's order of September 30, 2003.

¶ 2 The salient facts and procedural history of this case are as follows. Richard Peter Haentjens ("Husband") and Rosemary N. Haentjens ("Wife") were married in 1976 and separated twenty years later.[2] The couple has three adult children. (Master's Report, filed December 10, 2002, at 3). In 1987, when his father died, Husband inherited 44.47% of the family business, Barrett, Haentjens and Company ("the Company"), where he was then employed.[3] According to the trial court, Husband's interest in the Company at that time was worth approximately $2,181,268 (pre-tax). In 1994, the Company was sold to Warman International and subsequently renamed Hazelton Pumps, Inc. (N.T. Master's Hearing, dated September 4, 2002 at 187). As a result of that sale, Husband received $2,194,031, (pre-tax) in 1996, for his 44.47% interest.[4]

¶ 3 Wife filed for divorce on September 25, 1996, and the trial court appointed a Master on June 12, 2002.[5] On September 4 and October 10, 2002, respectively, the Master held hearings. At these hearings, Wife's expert proposed utilizing the figure of $711,459 as the correct valuation of Husband's interest in the Company as of 1987.[6] Using that figure, Wife's ex-

1. This Court consolidated the appeals via an order dated March 17, 2004.

2. Unless otherwise indicated, these facts are summarized from both the June 23, 2003 opinion of Judge Ciavarella, and the December 9, 2003 opinion of Judge Muroski.

3. Husband is currently employed by a successor company, Hazelton Pumps, Inc., earning approximately $183,000 per year. Wife worked as a homemaker during the entire marriage. Since the separation, Wife has been employed by the U.S. Postal Service earning approximately $31,000.00 per year. (Master's Report, at 3–5).

4. Although not expressly stated, we have gleaned from the record that the trial court utilized this figure, found in "Schedule 2" of the report prepared by Wife's expert. This schedule indicates that it was prepared based upon Husband's "1996 Form 1040, Schedule D." (R.R. 77).

5. In 1997, in the interim between Wife's commencement of the divorce action and the trial court's appointment of a Master, Wife filed a support complaint. By 2002, several orders had been entered regarding child support and alimony *pendente lite*.

6. At the time of his father's death, Husband's share of the Company was appraised by the IRS for estate tax purposes as worth $711,459 (net of taxes and with an allowance for a "minority discount"). A "minority discount" was permitted for valuation purposes, as Husband had a non-controlling interest in a privately-held company. The term "minority discount" can be defined and explained as follows: "[a minority discount is] a reduction in the value of a closely held business's shares that are owned by someone who has only a minority interest in the business. The concept underlying a minority discount is recognition that controlling shares—those owned by someone who can control the business—are worth more in the market than noncont-

pert proceeded to calculate the appreciation on Husband's interest in the Company between 1987 and 1996 by subtracting $711,459 from $1,861,070, which represented the after-tax, undiscounted value of the distribution Husband received following the sale of the Company. Using these values, it was Wife's expert's determination that Husband's interest in the Company had appreciated by $1,149,611 from 1987 to 1996.[7] By contrast, Husband's expert asserted that any appreciation on Husband's interest in the Company should be measured quite differently, specifically by applying "book value" as the factor by which to discount Husband's after-tax sale proceeds. Thus discounted, he argued, the sale proceeds could be more accurately compared to the 1987 IRS valuation which incorporated a minority discount. As a result, Husband's expert determined that Husband's after-tax sale proceeds of $1,861,070 should be discounted to $716,603 ("the book value" discount). Accordingly, by using this valuation method, it was Husband's expert's opinion that the appreciation on Husband's interest in the Company from 1987 to 1996 was only $5,144.

¶4 On December 10, 2002, the Master filed his report and recommendation. In his report, the Master found that Wife's expert had presented the most accurate method of valuation for determining the actual appreciation of Husband's interest. The Master thus found that Husband's interest in the Company had appreciated by $1,149,611. (*See* Master's Report at 10–12). Both parties filed exceptions to the Master's report.

¶5 On June 23, 2003, Judge Ciavarella entered an order and opinion addressing these exceptions, and he disagreed with the Master's valuation of Husband's interest in the Company. He declined to utilize the 1987 IRS valuation employed by Wife's expert which incorporated a minority discount, and instead adopted the 1987 IRS valuation of $2,181,268, calculated pre-tax and without a minority discount, as the appropriate valuation of Husband's initial inheritance. It appears from a careful review of the record that the trial court then subtracted this undiscounted valuation from Husband's share of the pre-tax proceeds following the sale of the Company ($2,194,031). As a result, Judge Ciavarella determined that the value of Husband's interest in the Company had appreciated by only $12,763 between 1987 and 1996. In his opinion, Judge Ciavarella emphasized that pertinent financial data concerning the Company supported using this method of valuation, as that data demonstrated that the value of the Company had been fairly stable over the period in question. In other words, the true value of the Company had not appreciated significantly between 1987 and 1996, the relevant time period for valuing this marital asset.

¶6 In addition to its determination regarding the valuation of the appreciation of Husband's interest in the Company, the trial court also awarded Wife 75% of the total marital assets in equitable distribution. The gross value of these assets was $688,450. Wife's award included the marital residence, appraised at approximately $750,000, with $480,204 in equity. Judge Ciavarella apparently also awarded Wife

rolling shares." BLACK'S LAW DICTIONARY 1017 (8th ed.2004).

7. Pursuant to 23 Pa.C.S.A. § 3501(a)(3), property acquired by bequest, devise or descent is not considered marital property. However, for purposes of equitable distribution, the increase in value of a non-marital asset constitutes marital property. *Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383, 1385–1386 (1988).

alimony in the amount of $2,000 per month.[8] Wife appeals from this order.

¶ 7 On July 25, 2003, Judge Ciavarella signed a divorce decree, but retained jurisdiction over all economic issues in accordance with his order of June 23, 2003. Prior to the entry of either the equitable distribution order or divorce decree, Wife had been receiving APL from Husband in the amount of $4,800 per month.[9] After Judge Ciavarella entered his equitable distribution order, the Luzerne County Domestic Relations Section determined that Wife's APL was to terminate. However, on August 12, 2003, Wife filed a motion to continue APL. On September 30, 2003, this motion was heard by Judge Muroski, at which time both parties stipulated that their respective incomes had not changed since the original APL order was entered. Accordingly, Judge Muroski issued an order granting Wife's motion and reinstating the APL award of $4,800.00 per month, effective July 23, 2003. Judge Muroski's order also suspended alimony payments and directed that all of Husband's payments following the entry of the divorce decree be applied instead to his APL obligation. Husband appeals from this order.

¶ 8 At docket number 1222 MDA 2003, Wife raises the following issues for our review:

I. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DETERMINING THE INCREASE IN VALUE DURING THE MARRIAGE OF HUSBAND'S INTEREST IN THE CORPORATE STOCK HE INHERITED FROM HIS FATHER?

II. DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING WIFE'S CLAIM FOR ALIMONY?

(Wife's Brief at 3).

¶ 9 At docket number 1681 MDA 2003, Husband raises the following issue for our review:

DID THE LOWER COURT ABUSE ITS DISCRETION IN REINSTATING ALIMONY PENDENTE LITE DURING WIFE'S APPEAL OF AN EQUITABLE DISTRIBUTION AWARD WHERE THAT AWARD PROVIDES HER WITH MARITAL ASSETS VALUED AT OVER $688,000.00 AND ALIMONY OF $2,000.00 PER MONTH FOR EIGHTEEN (18) MONTHS?

(Husband's Brief at 3).

 ¶ 10 In her first issue, Wife asserts that the trial court abused its discretion in its calculation of the increase in value of Husband's 44.47% inherited interest in the Company. Specifically, Wife maintains that the trial court erred by not accepting the valuation methodology proffered by her expert. (Wife's Brief at 11–19). We disagree.

¶ 11 As a prefatory matter, we note that the following standard applies in matters pertaining to equitable distribution:

In assessing the propriety of an equitable distribution scheme, our standard of review is whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court there-

---

8. We note although Wife asserts that Judge Ciavarella did not award her alimony, the order itself *does* seem to grant Wife alimony. However, confusion exists as the trial court's opinion indicates that alimony is denied. See discussion, *infra.*

9. This APL order had been entered as a decree by agreement of the parties on July 31, 2002.

from, against the provisions of 23 P.S. § 402(d) [now 23 Pa.C.S. § 3502(a)] and the avowed objectives of the Divorce Code, that is, 'to effectuate economic justice between the parties...and insure a fair and just determination of property rights.' 23 P.S. § 102(a)(6) [now 23 Pa. C.S. § 3102(a)(6)].

*Isralsky v. Isralsky*, 824 A.2d 1178, 1184–1185 (Pa.Super.2003) (citations and quotations omitted). Further, it is well-settled that the trial court may accept some, all, or none of the submitted testimony for purposes of the valuation of marital property. *Id.* at 1185. By applying *Isralsky*, it is clear that the trial court in this case was well within its purview when it chose to disregard the valuation proposed by Wife's expert and utilized by the Master. Indeed, we agree that the valuation method adopted by the trial court was the most appropriate.

¶ 12 Instantly, the trial court had to calculate the value of any appreciation on Husband's 44.47% interest in the Company from the time he inherited the asset in 1987 until he received his share of the proceeds in 1996 from the 1994 sale of the Company. The Master used the IRS valuation which had been calculated expressly for purposes of the administration of Husband's father's estate as his starting value. This valuation incorporated a minority discount because Husband's interest constituted less than 50% of the privately-held company, which was appropriate in the context of an estate valuation. By simply subtracting this discounted figure from the amount Husband ultimately received nine

years later, as a result of the arms-length sale of the Company, the Master determined that Husband's interest in the Company had appreciated by $1,149,611 over the period in question.[10] The error in using this method of assessment is that it effectively compares apples to oranges: the initial valuation, assessed in the context of an estate administration, incorporated a substantial minority discount, while the ultimate "value" received certainly did not contain such a discount as the entire business was sold.

¶ 13 The trial court rejected this fundamentally flawed analysis, and instead utilized the pre-tax, undiscounted IRS valuation as the initial value of Husband's inherited interest as of 1987. By using a valuation which did not incorporate a minority discount, the trial court could more accurately compare the (undiscounted) pre-tax initial value of Husband's interest in the Company to the (undiscounted) pre-tax sale proceeds Husband ultimately received for his 44.47% interest. As a result, the trial court determined that Husband's interest in the Company had appreciated by $12,763 during the period in question.[11] Further, as noted above, the trial court did emphasize that this relatively small increase which resulted from its method of measuring the appreciation of Husband's interest in the Company was more congruent with the very small overall growth of the business over the period in question. (*See* Trial Court Opinion at 5). We agree. Accordingly, we conclude that

---

10. Master's valuation of the appreciation of Husband's interest in the Company from 1987 to 1996:

$ 1,861,070 (1996 after-tax, sale proceeds received by Husband)
- 711,459 (1987 after-tax, IRS valuation calculated using a minority discount)
$ 1,149,611 (appreciation)

11. Trial Court's valuation of the appreciation of Husband's interest in the Company from 1987 to 1996:

$ 2,194,031 (1996 pre-tax, sale proceeds received by Husband)
- 2,181,268 (1987 pre-tax, IRS valuation calculated **without** using a minority discount)
$ 12,763 (appreciation)

Wife's first argument is unavailing and we affirm the appreciation as calculated by the trial court.

¶ 14 In her second issue, Wife asserts that the trial court abused its discretion by denying her claim for alimony. A review of the order in question, however, reveals that the trial court *did* provide an award of alimony therein:

> Defendant is directed to pay alimony to Plaintiff in the amount of $2,000 per month from the date of this Order until December 10, 2004.

(Trial Court Order, dated June 23, 2003). Oddly, however, in the trial court opinion it appears as if alimony has been denied:

> Given the equitable distribution award to Wife as set forth above and the degree of financial security resulting therefrom, this Court finds that Wife's claims for alimony and counsel fees are properly denied.

(Trial Court Opinion at 7). As a result of this inconsistency between the trial court's order and opinion, we remand that portion of the order which awards alimony for the trial court to clarify its alimony determination.

¶ 15 Turning to Husband's sole issue raised on appeal, he contends that the trial court abused its discretion by reinstating APL for Wife in the amount of $4,800 per month because Wife had already been awarded over $688,000 in marital assets as her equitable distribution award. Husband argues alternatively that even if continued APL was appropriate as Wife had not yet received her equitable distribution award, the trial court still abused its discretion by failing to give Husband a credit for all APL payments made after the entry of the equitable distribution award. (*See* Husband's Brief at 9–11). For the reasons that follow, we hold that the trial court's award of APL was proper and conclude that Husband should not receive a credit for APL payments made after the entry of the equitable distribution award.

¶ 16 We begin our analysis by noting that APL awards are reviewed under an abuse of discretion standard. *See Isralsky*, 824 A.2d at 1188. Further, it is helpful to note the purposes underlying APL:

> APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.

*Melton v. Melton*, 831 A.2d 646, 655 (Pa.Super.2003) (citation omitted).

¶ 17 As a party's need for APL is a function of that party's economic means during litigation, Pennsylvania courts have repeatedly been asked to determine at what point in the litigation process APL should terminate. It has long been the law in this Commonwealth that APL should terminate upon resolution of all matters concerning equitable distribution:

> Thus, while APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process *and any remand* until a final Order has been entered.

*DeMasi v. DeMasi*, 408 Pa.Super. 414, 597 A.2d 101, 104 (1991).

¶ 18 Subsequently, however, in *Prol v. Prol*, 840 A.2d 333, 336 (Pa.Super.2003), this Court concluded that APL should not be automatically continued during discretionary appeals, specifically those matters which are appealed to the Pennsylvania Supreme Court. *Id.* at 335. However, our Court in *Prol* emphasized that parties are automatically eligible to receive APL through appeals to this Court, as such appeals are not considered discretionary. *Id.* at 335–336.

¶ 19 In the case *sub judice*, we recognize and acknowledge that Wife clearly needed APL throughout the duration of the instant appeal, as she has not yet received her equitable distribution award. Applying *Prol*, we are constrained to conclude that Husband should not receive a credit for the APL he has paid since the time of the trial court's equitable distribution order. Accordingly, we affirm Judge Muroski's award of APL because we conclude that APL was properly reinstated in this case. We also affirm that portion of Judge Ciavarella's order regarding the valuation of the appreciation on Husband's interest in the Company; and we vacate and remand that portion of the order regarding alimony for clarification.

¶ 20 Order dated June 23, 2003, affirmed in part; vacated in part, and remanded with instructions. Order dated September 30, 2003 affirmed. Jurisdiction relinquished.