J-A26015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KRISTIN E. TRANQUILLI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARK V. TRANQUILLI, | |
| Appellee | No. 637 WDA 2018 |

Appeal from the Order Dated April 5, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-16-007214

| | |
|---|---|
| KRISTIN E. TRANQUILLI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARK V. TRANQUILLI, | |
| Appellee | No. 638 WDA 2018 |

Appeal from the Order Dated April 5, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-16-007214

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:              **FILED MARCH 07, 2019**

Appellant, Kristin E. Tranquilli ("Wife"), appeals from the order dated April 5, 2018, and entered on April 12, 2018, granting Appellee's, Mark V. Tranquilli ("Husband"), motion to enter a modified PACSES order.  Wife also

appeals from the modified PACSES order entered on April 5, 2018, which resulted in the reduction of the amount of child support awarded to Wife and the termination of her award of alimony *pendente lite* ("APL").[1]  After careful review, we affirm.

We summarize the salient facts and procedural history of this case as follows.  Husband and Wife were married on May 31, 2003, and separated on April 25, 2015.  The parties have three minor children:  Lu.T. (born in April of 2005), M.T. (born in January of 2007), and Li.T. (born in February of 2009) (collectively "Children").  Wife initiated the divorce proceedings by filing a complaint on February 3, 2016, including counts for equitable distribution, alimony *pendente lite*, alimony, child support, injunctive relief, counsel fees, medical insurance, and life insurance policies.  Husband filed a counter complaint seeking shared legal custody and shared physical custody of Children.

On August 23, 2016, Wife was granted primary physical custody of Children, and Father was granted partial physical custody on a four-week rotating schedule, which included five overnights with Children in a two-week period.  On July 20, 2017, following petitions to modify custody filed by both parties, Husband's partial physical custody was increased to include six

_____

[1] The appeals at 637 and 638 WDA 2018 were consolidated by *per curiam* order of this Court, as both matters involve related parties and issues.  **See** Order, 5/15/18.

- 2 -

overnights with Children in a two-week period. The parties maintain shared legal custody of Children.

On October 24, 2016, the trial court entered the following relevant findings of fact:

1. [Husband's] net monthly income is $9,777.00.

2. [Wife's] net monthly income is $3,044.00.

3. The combined net income of the parties is $12,821.00.

4. [Husband's] percentage of the support obligation is 76%.

5. [Wife's] percentage of the support obligation is 24%.

6. The monthly basic child support is $2,654.00.

7. [Wife's] monthly share of health insurance is $28.00.

8. [Husband's] basic monthly child support obligation is $1,989.04 (76% x $2,654.00 - $28.00).

9. [Husband's] monthly share of extra[-]curricular activities is $754.52. (We used an annual figure of $16,000.00 from which we subtracted the figure of $7,827.00 contained in [Wife's] exhibit #4. One-half of the difference or $4,086.50 was added to $7,827.00 for a figure of $11,913.50. Seventy-six percent of that figure or $9,054.26 represents [Husband's] annual share of extra[-]curricular expenses. The monthly amount is $754.52. In reaching this figure we found the needs to be reasonable, given that the children's activities are involved, but decline to add the entire amount of [Husband's] share to his basic support obligation.)

10. [Husband's] total child support obligation is $2,743.56.

11. [Husband's] monthly spousal support obligation is $1,196.83.

12. [Husband's] total spousal and child support order[,] commencing July 1, 2016[,] is $3,940.39.

13. The monthly mortgage adjustment for the period [of] February 3, 2016 to June 30, 2016, pursuant to Rule 1910.16.6(e), is $1,395.16. (We used the total amount of indebtedness paid

by [Husband] during this period or a figure of $4,250.00 monthly.)

14. [Husband's] total monthly support order for the period [of] February 3, 2016 to June 30, 2016, is $2,545.21.

15. Total amount of arrearages is $9,887.53.

16. Monthly payment on arrearages is $200.00.

17. Total order with arrearages is $4,140.39….

Trial Court Order, 10/24/16, at 1-2.

Following a two-day equitable distribution hearing in September of 2017, the trial court entered an order on December 4, 2017, which distributed 55% of the marital assets to Wife, 45% to Husband, and directed Husband to pay Wife alimony for a period of 3 years, beginning in January of 2018, as follows: a.) $1,500.00 monthly in 2018; b.) $1,200.00 monthly in 2019; and c.) $800.00 monthly in 2020. *See* Trial Court Memorandum and Order, 12/4/17, at 5, 11 ("December 4, 2017 Order"). Both parties filed motions for reconsideration of the December 4, 2017 Order.

On reconsideration, the trial court acknowledged that, in its granting of alimony, it failed to consider the monthly APL payments Husband had made to Wife for a period of eighteen (18) months, as well as the financial contribution Wife received from her family. Trial Court Memorandum and Order, 2/1/18, at 3, 5 ("February 1, 2018 Order"). Accordingly, the trial court reduced the period of alimony to 2½ years and the monthly payment for the first year to $1,300.00. *Id.* The trial court also reduced Husband's share of child support to 71.5% to reflect the additional overnights with Children awarded to him and calculated a revised child support payment in the amount

- 4 -

of $1,591.31 per month, which also reflected the adjusted net incomes of Husband and Wife after incorporating the change in alimony. *See id.* at 4, 6.

On February 1, 2018, the trial court issued a final divorce decree. *See id.* at 5 ¶1 (proclaiming "[Wife] and [Husband] are hereby divorced from the bonds of matrimony"). Husband later filed a motion requesting the court to enter a modified PACSES order to reflect the reduced alimony and child support amounts set forth in the February 1, 2018 Order. On April 5, 2018, the trial court granted Husband's motion, *see* Trial Court Memorandum and Order, 4/5/18, at 1-2 ("April 5, 2018 Order"), and entered a modified support order, which directed the following: 1) monthly child support payments to Wife in the amount of $1,591.31 to begin on April 1, 2018; 2) termination of APL payments as of January 31, 2018; and 3) monthly alimony payments to Wife in the amount of $1,300.00 from February 2018 to January 2019, in the amount of $1,200.00 from February 2019 to January 2020, and $800.00 per month from February 2020 to July 2020. *See* Final PACSES Order, 4/5/18, at 1-3 ("PACSES Order").

On April 30, 2018, Wife filed timely notices of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She now presents the following issues for our review:

> A. Whether the trial court erred in [the entry of] its … April 5, 2018 [Order,] by ordering that a modified PACSES order be entered which terminated Wife's [APL] and health insurance prior [to] an entry of a decree in divorce[?]

B. Whether the trial court erred by entering a modified PACSES order which reduced Wife's child support based upon a net monthly income which the trial court asserted was "stipulated," but was specifically not agreed upon by Wife[?]

C. Whether the trial court erred in entering a modified PACSES order which severed Husband's proportionate obligation for the children's activity expenses from his ongoing support award[?]

D. Whether the trial court erred by entering a modified PACSES order which provided Husband with a reduced child support award based upon additional overnights for Husband in a custody order, despite the same custody order expanding Wife's custody, without any similar deviation or offset for Wife[?]

E. Whether the trial court erred in setting the amount and term of Wife's alimony, given the evidence and testimony presented at trial[?]

Wife's Brief at 9.

In her first claim, Wife argues that the trial court erred in terminating her APL. *Id.* at 28. Thus, preliminarily, we note:

We review APL awards under an abuse of discretion standard. ***Haentjens v. Haentjens***, 860 A.2d 1056, 1062 (Pa. Super. 2004). APL is "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.[] § 3103. APL "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." ***Litmans v. Litmans***, … 673 A.2d 382, 389 ([Pa. Super.] 1996). Also, and perhaps more importantly, "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." ***Id.*** at 388. APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation. ***DeMasi v. DeMasi***, … 597 A.2d 101, 104-[]05 ([Pa. Super.] 1991). Alimony, in contrast, is terminated upon remarriage or cohabitation. ***Id.*** at 104-[]05; ***see also*** 23 Pa.C.S.[] § 3706. Since, however, the purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding, it does not come with the "sanction" of Section 3706. ***De Masi***, [597 A.2d] at 104-[]05. "APL focuses on

the ability of the individual who receives the APL during the course of the litigation to defend him/herself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse." **Haentjens**, [860 A.2d] at 1062; **see also DeMasi**, [597 A.2d] at 105.

**Childress v. Bogosian**, 12 A.3d 448, 463 (Pa. Super. 2011) (quoting **Schenk v. Schenk**, 880 A.2d 633, 644-45 (Pa. Super. 2005)).

Additionally, we note that in ruling on a claim for APL,

" … the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." **Litmans**[,] … 673 A.2d [at] 389…. "An award of [APL] may be modified or vacated by a change in circumstances…. It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justified a modification." **Id.** at 388.

**Childress**, 12 A.3d at 463 (quoting **Busse**[ **v. Busse**], 921 A.2d [1248,] 1255 [(Pa. Super. 2007)].

Here, the PACSES Order terminated Husband's obligation for APL on January 31, 2018, and directed alimony payments to Wife to begin on February 1, 2018. Wife claims that, due to the court's termination of her APL, she has been compelled to fund this additional litigation with her alimony award from Husband. Wife's Brief at 31. She further avers that she "continues to not have equal financial resources with Husband to pursue this appeal," and that the premature termination of her APL was an abuse of the court's

discretion.   *Id.*[2]   After careful review, we deem Wife's argument to be meritless.

It has long been the law in Pennsylvania that "APL should terminate upon resolution of all matters concerning equitable distribution[.]" *Haentjens*, 860 A.2d at 1062.

> Thus, while APL typically ends at the award of the divorce decree, which also should be at the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process and any remand until a final Order has been entered.

*Id.* (quoting *DeMasi*, 597 A.2d at 104).  In the instant matter, an equitable distribution order was entered on December 4, 2017, to which no appeal was filed, and a final divorce decree was entered on February 1, 2018.  The termination of the APL payments corresponds with the entry of the divorce decree, and Husband was ordered to begin paying monthly alimony to Wife immediately following.  Thus, we discern no abuse of discretion in the trial court's termination of the APL.

The remainder of Wife's claims relate to the modification of support payments by the trial court.

> When modification of a child support order is sought, the moving party has the burden of proving by competent evidence that a

---

[2] To the extent that Wife asserts no final divorce decree has been entered in this case, we note that the February 1, 2018 Order expressly stated:  "[Wife] and [Husband] are hereby divorced from the bonds of matrimony."  February 1, 2018 Order at 5 ¶1. Moreover, the trial court clearly indicated its intention for the February 1, 2018 Order to serve as a final decree in divorce in its accompanying memorandum.  *See id.* at 4.

material and substantial change of circumstances has occurred since the entry of the original or modified order. The lower court must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions.

**McClain v. McClain**, 872 A.2d 856, 863 (Pa. Super. 2005) (quoting **Samii v. Samii**, 847 A.2d 691, 695 (Pa. Super. 2004)).

It is well-settled that when reviewing a support order,

this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Sirio v. Sirio**, 951 A.2d 1188, 1192-93 (Pa. Super. 2008) (quoting **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa. Super. 2007)). Furthermore, this Court,

must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

**Mackay v. Mackay**, 984 A.2d 529, 533 (Pa. Super. 2009) (quoting **Hogrelius v. Martin**, 950 A.2d 345, 348 (Pa. Super. 2008)). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is

within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented." ***Id.*** (internal citations and quotation marks omitted). "This Court is not free to usurp the trial court's duty as the finder of fact." ***Id.*** (internal citations omitted).

Instantly, we address Wife's second and fourth claims together for ease of disposition, as both issues relate to the modification of the child support award. Wife asserts that the trial court erroneously reduced her child support award based on an inaccurate annual earning capacity for her of $45,000.00. Although Wife acknowledges that she stipulated to an earning capacity of $45,000.00 in September of 2016, ***see*** Stipulation, 9/15/16, at 1 ¶2, she argues that the court improperly relied on the stipulated amount because that figure is no longer feasible. Wife requests that this matter be remanded to the trial court for a determination based on her actual income, rather than the previously stipulated amount.

In response to Mother's claims, we first note that:

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.

***Woskob v. Woskob***, 843 A.2d 1247, 1251 (Pa. Super. 2004) (internal citations omitted). Moreover, we have previously explained:

> Child support is a paramount duty of a parent. The principle is so firmly established in our law that a parent's obligation is based on her "earning capacity" rather than her actual income. In an effort to insure that parents attend to the immediate financial needs of their children, courts frequently look beyond the income actually received. *Neil v. Neil*, 731 A.2d 156 (Pa. Super. 1999). In recognition of this overriding concern in the context of child support, a parent who chooses not to take advantage of income available to her is nevertheless deemed to have the capacity for such earnings, which are then included in her income available for support. *Laws v. Laws*, 758 A.2d 1226 (Pa. Super. 2000).

*MacKinley v. Messerschmidt*, 814 A.2d 680, 683 (Pa. Super. 2002). Based on our review of the applicable law, we discern no error or abuse of discretion in the trial court's calculation of child support based on Wife's earning capacity, rather than her actual income.

As further explanation of the alimony and child support awards in this case, the trial court incorporated its prior December 4, 2017 and February 1, 2018 memoranda and orders into its Rule 1925(a) opinion. Trial Court Opinion ("TCO"), 6/1/18, at 2. In its analysis, the court noted that Wife is college educated, has a successful background in pharmaceutical sales, is currently a licensed real estate agent and, therefore, concluded that "[s]he has the potential to earn a significant income over the next twenty (20) or so years." December 4, 2017 Order at 2-3 ¶3. The court also acknowledged that Wife has primary physical custody of Children and that, given the nature of her previous employment in sales and real estate, her earning power may be affected by her custodial care for Children. *Id.* at 8 ¶7. Finally, in considering Wife's employment potential, the trial court opined:

- 11 -

We have no doubt that [Wife] is capable of self[-]support through employment. She has a college education, has work experience, has a real estate license, and from her conduct as a witness in this case, is obviously an astute individual. The real question to us, given her present circumstances, is how long that process will take.

*Id.* at 9 ¶17.

Contrary to Wife's assertion that an earning capacity of $45,000.00 is not feasible, her testimony at the September 12, 2017 equitable distribution hearing appears to indicate otherwise. Wife acknowledged on cross-examination that during the years 2000 through 2010, there were only three years during which she earned less than $45,000.00, and that during more than half of those years, she, in fact, earned a substantially higher income. N.T. Hearing, 9/12/17, at 155.[3] Wife further testified that since obtaining her real estate license in December of 2015, she has only had three real estate listings, which consisted of the sale of the parties' marital home, Wife's parents' home, and the purchase of her current boyfriend's home. *Id.* at 156-57. Although Children are all school-aged at this time, Wife stated that she was forced to "take a step back" from her job through Northwood Realty due

---

[3] Wife's Social Security statements indicated the following taxed Social Security earnings: $62,283.00 in 2000, $50,876.00 in 2001, $33,310.00 in 2002, $12,210.00 in 2003, $71,309.00 in 2004, $76,808.00 in 2005, $81,411.00 in 2006, $68,426.00 in 2007, $56,079.00 in 2008, $35,435.00 in 2009, and $46,822.00 in 2010. *See id.* at 154-55.

to her custodial care for Children, **see id.** at 159, and admitted that she did not apply for any other jobs in 2017 to supplement her income. **Id.** at 162.[4]

Moreover, both parties had the opportunity to brief the issue of whether the trial court should be permitted to rely on Wife's stipulated earning capacity in calculating the child support amount, prior to the September 12, 2017 hearing. Wife argued that she should not be bound by her prior stipulation and claimed that, since October of 2016, earning a salary in the range of $45,000.00 had become impossible, *i.e.*, she is unable to work on a full-time basis as a real estate agent due to her custodial responsibilities. **See** Wife's Brief on Earning Capacity, 9/6/17, at 2-3. In response, Husband argued that Wife has "chosen to abandon her stipulated earning capacity" and that she has made no effort to increase her earnings. **See** Husband's Reply Brief, 9/7/17, at 1-2. After careful review, we conclude that there is sufficient evidence in the record to sustain the trial court's support order, and we discern no abuse of discretion.

Next, Wife argues that the trial court erred in severing Husband's proportionate responsibility for Children's activity expenses from his wage-attached child support obligation. Wife avers that Husband has yet to make any payments toward his extra-curricular balance and, thus, requests that the PACSES Order be amended to include these activity costs in Husband's wage

---

[4] Wife also receives income through the management of two commercial rental properties which she owns. Wife's Brief at 10. **See also** N.T. Hearing at 164-86 (indicating a net disposable income from the rental properties in the amount of $20,000.00 in 2015, $28,205.00 in 2016, and $16,972 in 2017).

attachment obligation. Wife's Brief at 42, 44. Again, we deem Wife's claim to be wholly without merit.

The Pennsylvania Rules of Civil Procedure govern the allocation of additional expenses between parties, in relevant part, as follows:

**Rule 1910.16-6. Support Guidelines. Basic Support Obligation Adjustments. Additional Expenses Allocation**

The trier-of-fact may allocate between the parties the additional expenses in subdivisions (a)—(e). If a basic support order is inappropriate under the facts of the case, the trier-of-fact may allocate between the parties the additional expenses.

…

**(d) Private School Tuition. Summer Camp. Other Needs.** Expenditures for needs outside the scope of typical child-rearing expenses, e.g., private school tuition, summer camps, have not been factored into the Basic Child Support Schedule.

(1) If a party incurs an expense for a need not factored into the Basic Child Support Schedule and the trier-of-fact determines the need and expense are reasonable, the trier-of-fact shall allocate the expense. *The trier-of-fact may order that the obligor's expense share is added to his or her basic support obligation, paid directly to the service provider, or paid directly to the obligee*….

Pa.R.C.P. 1910.16-6(d) (emphasis added).

The trial court explained in its Rule 1925(a) opinion that Children's activity expenses were not removed from Husband's obligations but, rather, were included in the "Other Conditions" section of the PACSES Order. ***See*** PACSES Order at 3 (providing "[Husband] shall be responsible for 71.5% of extra[-]curricular expenses calculated on $11,913.50 annual costs"). Based on our review, the figures included in the order properly reflect Husband's share of the expenses, and the trial court clearly has broad discretion to

- 14 -

determine the manner in which a party is to pay such expenses. *See* Pa.R.C.P. 1910.16-6(d)(1). Thus, we discern no abuse of discretion in the trial court's decision to not include Husband's share of the extra-curricular expenses in his wage-attached support payment.

In her final issue, Wife asserts that the trial court abused its discretion in setting the term and amount of her alimony. As noted *inter alia*, the court originally awarded Wife alimony in the amount of $1,500.00 per month in the first year for a set term of three (3) years. In its statement of reasons for the award of alimony pursuant to 23 Pa.C.S. § 3701(d), the trial court indicated:

> [Wife] leaves the marriage with the potential of being self[-]sufficient, but with the need for a period of financial assistance in order to realize that potential. The marriage was not particularly lengthy[] but[,] during it[,] [Wife] made substantial contribution as a homemaker and to [Husband] being able to attain his present position. [Wife] believes her child care duties will hamper her employment efforts and to some extent they may. We believe a period of three years is reasonable, given the need to become reestablished in the work force and her child care duties, particularly in the short term. The amount [during] the first year beginning in January, 2018, will be $1,500.00. Since we have concluded that [Wife] has the potential to generate income, the amount will be reduced in the subsequent years to $1,200.00 monthly in 2019 and $800.00 monthly in 2020.

December 4, 2017 Order at 10.

In his motion for reconsideration, Husband argued that the court erred in awarding three (3) years of alimony based on a twelve (12) year marriage and that the monthly alimony amount failed to take into consideration the payment of APL for eighteen (18) months. Convinced by Husband's argument, the court reduced Wife's monthly alimony for the first year to $1,300.00 and

limited the term to thirty (30) months. *See* February 1, 2018 Order. The court provided the following explanation in support of this modification:

> We noted in our decision that the marriage was not lengthy, but also considered a number of factors in arriving at a time period for alimony. We did not specifically consider the fact that [Wife] has received a rather substantial monthly payment of [APL] for a period of eighteen (18) months. We believe some consideration should be given to this circumstance. [Husband] contends the award of $1,500 monthly in alimony for the first year is excessive, given [Wife's] earnings and earning capacity and the contribution from her family. We do not believe the first basis for this objection has merit. We will, however, give some consideration to the second factor. As we indicated in our original decision, [Wife] has no concrete financial expectation from her parents. Her parents have purchased a home which she rents. [Wife's] father testified he uses this rental money to pay her legal bills. Considering the above factors, we will modify the period of alimony to 2½ years and the month payment for the first year to $1,300.00.

*Id.* at 3. Based on our review, we deem the alimony award to be adequately supported by the record, and we discern no abuse of discretion by the trial court.

For the foregoing reasons, we affirm the trial court's April 5, 2018 Order granting Husband's motion requesting a modified PACSES order, and the April 5, 2018 PACSES Order, terminating APL and modifying the child custody and alimony amounts.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/7/2019</u>