J-A26040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHEILA TERPIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEOFFREY KNAAK | : | No. 13 EDA 2020 |

Appeal from the Order Entered August 31, 2018
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  No. 2015-01676,
PACSES No. 985115468

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:             **FILED NOVEMBER 06, 2020**

Appellant Sheila Terpin ("Wife") appeals from the order entered by the Court of Common Pleas of Delaware County that awarded alimony *pendente lite* (APL) to Wife during the pendency of her divorce proceedings with Appellee Geoffrey Knaak ("Husband").[1]  After careful review, we affirm.

Husband and Wife married on June 30, 2006, and after ten years of marriage, the parties separated in 2016. The couple does not have any

---

[*] Former Justice specially assigned to the Superior Court.

[1] The support order entered on August 31, 2018 became a final appealable order when the divorce decree was entered at Docket No. 2016-006259.  As discussed *infra*, Wife also filed six additional notices of appeal to challenge the divorce decree and related rulings entered by the Honorable Linda Cartisano on the same trial court docket. We have resolved those appeals in a separate memorandum at docket numbers 10-12 EDA 2020, 14 EDA 2020, and 25-26 EDA 2020.

children. On August 13, 2015, Wife filed an initial complaint for spousal support that was vacated by agreement of the parties.

On March 26, 2016, Wife filed a Petition to Re-Open Support. On July 14, 2016, a hearing was held before a support master. On the same date, the master entered an order awarding Wife $3,000/month in spousal support, requiring Husband to continue providing Wife health insurance through his work, and deeming Husband responsible for 85% of Wife's unreimbursed medical expenses that exceed $250.00 per year. On July 20, 2016, Husband filed a Complaint in Divorce.

On January 31, 2018, Wife filed a petition for modification of support. On March 26, 2018, the support master held a hearing and subsequently denied Wife's petition. On April 4, 2018, Wife filed a demand for a hearing *de novo* and a petition for recover unreimbursed medical expenses.

On June 26, 2018, the Honorable William C. Mackrides held a hearing *de novo* to evaluate Wife's petitions. Wife testified that she was 55½ years old and had not worked for the past ten years. Notes of Testimony (N.T.), 6/26/18, at 24-25. Wife indicated that her last job was when the parties lived in Canada and she volunteered in an unpaid position in "a human resources capacity." N.T. at 25. Wife indicated that, after the parties moved to Philadelphia in 2006, she looked for employment by joining Careerlink and a networking group. N.T. at 26-27. Wife obtained an Associate's Degree from Widener University and maintained a 4.0 GPA. N.T. at 27-28, 53. Wife admitted that she has "20-plus years corporate experience," argued that she

had "tons of proof" of her job search, but conceded she did not have any such evidence at the hearing. N.T. at 52-53.

Wife asserted that she had multiple medical conditions that prevented her from obtaining employment, which included a concussion, broken finger, sprained ankle, and heart trouble as shown by an abnormal EKG. Wife also indicated that she was seeing a psychologist for emotional trauma caused by the stress of the divorce. N.T. at 34-42. However, Wife did not introduce any medical records to document these ailments or to support her claim that she was disabled and thus, unable to work. Wife has never filed for Social Security Disability. N.T. at 48.

Wife also testified that she has not conducted a serious job search because of her injuries and the divorce. N.T. at 42. Moreover, Wife indicated that certain life circumstances prevented her from finding employment, including the death of her pet cat. Wife testified that her "beloved cat got cancer and ended up dying. This is important because you can't start a job." N.T. at 30-31.

In an order entered August 31, 2018, the trial judge, the Honorable William C. Mackrides, determined Wife was entitled to alimony *pendente lite* (APL) during the pendency of the divorce.[2] The trial court calculated Husband's monthly net income to be $9,121.58, imputed income to Wife in the amount of $1,507.83 per month, and determined Wife was entitled to

---

[2] The trial court also required Husband to pay Wife an additional sum of $1,530.00 in unreimbursed medical expenses.

$3,045.50 each month in APL. The trial court found it necessary to impute an income to Wife as she "**willfully** failed to find or maintain a job to support herself; her efforts were not at a level that is satisfactory to this Court." Trial Court Order, 8/29/18, at 8 (emphasis in original). The trial court found Wife credibly admitted that she has not attempted to secure employment in Pennsylvania as she intends to move when the parties' divorce is final. The trial court noted that Wife failed to introduce any documents to support a job search since 2016 or any evidence to support her claim of various physical ailments that prevented her from securing employment. *Id*.

On September 18, 2018, Wife filed a motion for reconsideration, which the trial court denied on September 24, 2018. The support order did not become appealable until the parties' divorce decree was entered on November 26, 2019 on Docket No. 2016-06259. *See Portugal v. Portugal*, 798 A.2d 246, 255 (Pa.Super. 2002) (emphasizing that this Court does not "have jurisdiction to entertain an appeal from an order of spousal support until a divorce is final"); *Thomas v. Thomas*, 760 A.2d 397, 398 (Pa.Super. 2000) (stating that "a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved"). Wife filed this timely appeal on December 19, 2019.

Wife raises the following issues for our review on appeal:

1. Did the Court err by imputing income on Wife despite her disability and injuries?

2. Did the Court err by calculating Husband's monthly income incorrectly?

3. Did the court err by denying [Wife] reconsideration? The previous statement noted that [Wife's] former attorney, Barbara Flum Stein, failed to submit Wife's medical documentation to the court. Furthermore, [Wife's] former attorney, Barbara Flum Stein, had proof of Wife's previous job search efforts and participation in the job re-entry program, New Choices. Had [Wife's] former attorney presented this proof, it would have supported the fact that [Wife's] income should not have been imputed when calculating alimony. Wife was a student, volunteer, homemaker and caregiver during the marriage, and, as a result of her contributions to the marriage, Husband was relieved and able [to] triple his salary. At the time of the marriage, Husband was only making $65,000/year. Husband makes $200,000+ as of the end of the 2019 fiscal year. This information was confirmed by a subpoena sent to his employer, Aria Systems. Wife is still disabled and needs to participate ongoing in more post-concussion therapy and other therapies for pain management. Wife sacrificed her former career for Husband's career aspirations and relocated with him twice, however, he and his employer did not assist Wife with her job search in any capacity, even though spouses are typically offered job assistance when relocated. Husband and Wife relocated twice in order for Husband to continue his career endeavors. Husband first relocated Wife out of the country to Quebec, despite the fact that Wife didn't speak any French. Husband then relocated Wife a second time to Pennsylvania at the height of the Recession, where she had no job network or personal network to tap into. Wife cannot be expected to support herself (a) while disabled and (b) after being removed from the workforce for such a substantial period.

4. Did the court err by not holding Husband in contempt, even though (a) Husband had not disclosed his increased salary/bonus/stock option grant for approximately 1.5 years, and (b) Husband's spousal support/alimony pendente lite Order said that he was supposed to submit a change of circumstances to the court within 7 days?

5. Did the court err by not putting Husband on the stand to question his actions of filing a Petition to Modify for a reduction or to eliminate the spousal support/alimony pendent lite when Wife was unable to work?

6. Did the court err by denying Wife the opportunity to present Physician Verification forms?

7. Did the court err when Judge Mackrides made a factual error on his order when he incorrectly stated that Wife had 20 years' experience working in human resources in his Order when Wife did not work in human resources for 20 years? That error is extremely misleading to the court and implies that Wife is employable when she currently is not.

8. The Court erred by not considering Wife's severe injuries and imputing income on Wife?

Wife's 1925(b) Statement, 1/21/20, at 1-3.

Our standard of review is as follows:

[w]e review APL awards under an abuse of discretion standard. *Haentjens v. Haentjens*, 860 A.2d 1056, 1062 (Pa.Super. 2004). APL is "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. APL "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." *Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382, 389 (1996). Also, and perhaps more importantly, "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *Id.* at 388. APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation. *DeMasi v. DeMasi*, 408 Pa.Super. 414, 597 A.2d 101, 104–105 (1991). Alimony, in contrast, is terminated upon remarriage or cohabitation. *Id.* at 104–105; *see also* 23 Pa.C.S.A. § 3706. Since, however, the purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding, it does not come with the "sanction" of Section 3706. *DeMasi*, at 104–105. "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available

to the spouse." ***Haentjens***, at 1062; ***see also DeMasi***, at 105.

> ***Childress*** [***v. Bogosian***], 12 A.3d [448, 463 (Pa.Super. 2011)] (quoting ***Schenk v. Schenk***, 880 A.2d 633, 644–45 (Pa.Super. 2005)).

***Carney v. Carney***, 167 A.3d 127, 134–35 (Pa.Super. 2017) (footnote omitted).

Before we reach the merits of Appellant's arguments, we acknowledge that Wife's reproduced record and appellate brief do not comply with our rules of appellate procedure. Husband asks this Court to quash Wife's appeal as her reproduced record does not satisfy the requirements in Pa.R.A.P. 2154 for several reasons. First, Wife failed to file a Designation of the Contents of the Reproduced Record as required by Rule 2154, which denied Husband the opportunity to submit a counter-designation. Second, Wife failed to present a complete reproduced record as she did not include the pertinent hearing transcript. Third, Wife includes evidence not of record in her reproduced record, including a document that the trial court held was inadmissible.

However, although Husband argued in his appellate brief that Wife's appeal should be quashed for failure to comply with Rule 2154, we note that Husband did not file a separate application for relief pursuant to this Pa.R.A.P. 123(a) and Pa.R.A.P. 1972. ***See*** Pa.R.A.P. 123(a) (stating procedure for a party to move for dismissal is by filing an application for relief); Pa.R.A.P. 1972 (providing that motions to dismiss or quash appeals are subject to Rule 123). This Court has held that we will not consider whether an appellant violated Pa.R.A.P. 2154 where the appellee failed to file a separate motion

seeking the quashing of the appeal for a Rule 2154 violation. *Gold v. Rosen*, 135 A.3d 1039, 1041 (Pa.Super. 2016) (citing *Commonwealth v. Sohnleitner*, 884 A.2d 307, 312–13 (Pa.Super. 2005)). As such, we decline to quash the appeal on this basis.[3]

Wife's brief also contains several violations of our rules of appellate procedure. While Wife listed eight claims for our review in her statement of questions presented, she only includes one single analysis section to challenge the trial court's calculation of APL. Our rules of appellate procedure require an appellant to divide her appellate brief into sections addressing each of the issues she lists in her statement of questions involved. Pa.R.A.P. 2116(a); 2119(a).

In addition, Wife failed to preserve some of her issues before the lower court. In Issue #3, Wife blames the trial court for her previous counsel's failure to present documentation of her medical claims and her job search efforts. In Issue #5, Wife asserts that the trial court should have put Husband on the witness stand to testify. Wife did not present these claims to the trial court and did not request that Husband be made to testify at the hearing. Pa.R.A.P. 302 provides that "[i]ssues not raised in the lower court are waived

---

[3] We assure the parties that we will not consider the extraneous information that Wife included in her reproduced record. It is well-established that: "an appellate court is limited to considering only the materials in the certified record. Additionally, it is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case." *In re S.M.*, 176 A.3d 927, 934 (Pa.Super. 2017) (citations and brackets omitted).

and cannot be raised for the first time on appeal." Pa.R.A.P. 302. As such, these issues are waived.

Moreover, Wife neglected to develop several of her issues with relevant authority and pertinent analysis to allow this Court to review her claims on appeal. In Issue #2, Wife argues that the trial court incorrectly calculated Husband's income, but provides no argument to specify how Husband's income should have been calculated. In Issue #3, Wife does not offer any authority to support her suggestion that the trial court should be held responsible for her prior counsel's failure to provide evidence to support her claims that she had participated in a job search and was prevented from working due to various medical ailments. In Issue #4, Wife does not challenge the trial court's conclusion that a finding of contempt was unnecessary as Husband's failure to report income resulted in a *de minimis* change in Husband's support obligations. In Issue #6, Wife does not develop any argument to support her claim that the trial court erred in finding Wife's Physician Verification form to be inadmissible when Wife did not seek to offer expert testimony to authenticate this document.

Due to Wife's failure to offer meaningful development of these issues, we will deem these arguments waived. "It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal." *C.H.L. v. W.D.L*, 214 A.3d 1272, 1276 (Pa.Super. 2019) (citing Pa.R.A.P. 2119(b); *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003)).

The only arguments that Wife has adequately preserved for our review on appeal are interrelated. In Issues 1 and 8, Wife claims the trial court erred in assessing Wife an imputed income and in refusing to accept her claim that she was disabled and unable to work. In Issue 7, Wife argues that the trial court erred in mischaracterizing her past work experience in calculating her imputed income.

In reviewing similar claims, this Court has held that:

> "[a] person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." ***Gephart v. Gephart***, 764 A.2d 613, 615 (Pa. Super. 2000). Past earnings alone are not sufficient to support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. ***See D.H. v. R.H.***, 900 A.2d 922 (Pa. Super. 2006) (holding trial court erred in determining earning capacity based solely upon party's most recent tax return). Moreover, Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4), addressing earning capacity, provides:

>> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours,

working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4)[.]

*Conner v. Conner*, 217 A.3d 301, 314–15 (Pa.Super. 2019) (emphasis omitted).

In this case, the trial court considered the factors necessary to impute an earning capacity to Wife. At the support hearing, Wife indicated that she was 55 1/2 years old and had earned an Associate's Degree from Widener University, where she had maintained a 4.0 GPA. N.T. at 27-28, 53. Wife claimed it was Husband's fault that she did not find employment for twelve years after moving to Pennsylvania in 2006 as Husband and his employer did not offer assistance in her job search or access to Husband's professional network. Although Wife argued that she had "tons of proof" of her own efforts in searching for a job, she conceded she did not have any such evidence at the hearing and asserted that she should not be forced to look for a job in Pennsylvania as she intended to move once the divorce was finalized. *Id*.

With respect to Wife's claim that the trial court mischaracterized her work history, Wife herself testified on two occasions that she has "20-plus years corporate experience." N.T. at 52-53. Even though the trial court admitted that it erred in finding that Wife "was employed *in corporate human resources* for more than twenty (20) years," we agree with the trial court's assessment that this discrepancy was inconsequential and did not affect its decision with respect to Wife's employability. Trial Court Opinion (T.C.O.), 2/24/20, at 8 (emphasis added).

- 11 -

Moreover, there is no support in the record for Wife's allegation that she was unable to find and retain employment due to multiple injuries. Wife concedes that her former counsel failed to submit relevant evidence at the support hearing, including medical documentation of Wife's ailments and proof of Wife's previous job search efforts.

Based on the record in this case, we find no error in the trial court's decision to assess an imputed income to Wife, based on its findings that Wife willfully failed to obtain appropriate employment and did not provide support for her claim that she was disabled and unable to work. Accordingly, we conclude that the trial court properly exercised its discretion in entering the relevant support order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20