J-A24020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROGER YOUNG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONNA C. YOUNG | : | No. 1480 MDA 2024 |

Appeal from the Order Entered September 25, 2024
In the Court of Common Pleas of Columbia County Civil Division at
No(s): 2019-CV-0000237-DV

BEFORE: DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.: **FILED: DECEMBER 18, 2025**

Appellant, Roger Young ("Husband"), appeals from the September 25, 2024 equitable distribution order entered in the Columbia County Court of Common Pleas that, *inter alia*, awarded him 52% of the marital estate and ordered Appellee, Donna C. Young ("Wife"), to pay him $1000.00 per month in alimony for thirty months. Husband raises challenges to the valuation of property, the calculation of alimony, and the weight of the evidence. After careful review, we affirm.

The following factual and procedural history is relevant to this appeal. Husband and Wife were married in 2017 and separated on February 25, 2019. This is a second marriage for both, and they do not have any children together although Wife has an adult child from a previous marriage.

Husband is a 55-year-old self-employed mason with an 8th grade education. He has operated Young's Masonry, L.L.C. for twenty years. He

earned $72,590.00 in 2021. Husband has been diagnosed with immune thrombocytopenia since 2005, which is a platelet disorder that can lead to spontaneous bleeding. Husband was on Wife's health insurance throughout the two-year marriage.

Wife is 53 years old and is currently the Director of Key Performance Indicators for Quest Diagnostics. Wife's base salary in 2023 was $168,682.00 with an additional bonus of $43,000.00. Wife has a Master of Business Administration degree with a concentration in healthcare. Wife is in good health and has a 401(k)-retirement account.

Prior to their marriage, Husband constructed a home at 250 Campbell Road, Benton, PA, where he currently lives alone. Wife inherited a home from her father at 1409 Hemlock-Harveysville Road, Hunlock Creek, PA. During their marriage, Wife and Husband purchased, managed, and sold real estate together. The parties owned four rental properties, a two-acre lot, and a home in Apollo Beach, Florida ("Florida Property"), where Wife currently resides with her paramour. Husband has been collecting the rent from the rental properties and paying all the fees since the date of separation. The parties also owned ten vehicles, business equipment, a boat and trailer, farm equipment, guns and hunting equipment, a reloading bench, trailers, and a pole barn, which is a barn made from a kit.

After a hearing, the special master made recommendations to the trial court to award Husband 52% and Wife 48% of the marital property and ordered Wife to pay Husband $2,048.18 in alimony *pendente lite* ("APL") per

month. Both parties filed exceptions. The court overruled the exceptions and accepted the special master's recommendations. The court awarded Husband 52% and Wife 48% of marital property, found that Husband unnecessarily delayed the divorce proceedings, and ordered Husband to pay Wife $5,000.00 in attorney's fees. The court found the marital property to be worth $1,603,230.00 and divided assets to award Husband $816,753.93 in total assets and Wife $753,926.70 in total assets. After adjusting for counsel fees, health insurance, mortgage balances, etc., the court ordered Wife to pay Husband an additional lump sum of $66,747.00. The court also ordered Wife to pay Husband $1,000 per month in alimony for 30 months.

Husband appealed. Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband raises the following issues for our review:

I. The trial court erred in its discretion, and/or as a matter of law, in finding a pole barn as marital property and valuing the same at [] $163,500.00 [] in the marital estate, as the pole barn is separate property on lands of another, who has not, nor intends to, provide Husband any type of legal interest in the same. As such, the pole barn is not marital property, or alternatively, if it is marital property, it should have been assigned a value of zero ($0.00).

II. The trial court erred in its discretion, and/or as a matter of law, in not accepting Husband's 2023 real estate appraisal of the Florida [Property] with improvements at a fair market value of [] $850,000.00[], instead of [] $815,000.00[], as there is no basis in the court record to reduce the appraised value of [] $850,000.00 [] for the Florida [Property] with improvements.

III. The trial court erred in its discretion, and/or as a matter of law, in determining as marital property, the sum of []

$125,535.00 [] in net rental monies from the parties' rental properties over a 5-year span, as the trial court erroneously relied on Wife's projected earnings (Wife was an out-of-possession owner for five (5) years), as opposed to Husband's actual calculations, which correctly and accurately show net earnings from the rental properties, which are in substantial disrepair, in the amount of [] $26,500.00 [] over the five (5) year period.

IV.   The trial court erred in its discretion, and/or as a matter of law, in its analysis and application of 23 Pa. C.S. § 3502(a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), and (a)(9). Specifically, the trial court failed to consider or properly consider the following:

  a. Husband's serious health problems;
  b. Husband's limited income, which is [] $28,974.00 [], as opposed to the court's calculation at [] $72,590.00 [];
  c. Husband's limited income due to his serious health considerations;
  d. Husband's limited employability in any field other than construction;
  e. Husband's needs, such as post-divorce health insurance coverage;
  f. Husband's contributions to Wife's increased education during the marriage;
  g. Wife's significantly better opportunity to acquire future assets (e.g., Wife spent [] $75,000.00 [] on a new boat dock, not including the boat);
  h. Wife's substantial income of [] $243,000.00 [], her stock options, two (2) 401Ks, and continued health insurance through employment, as opposed to Husband, who has limited income and no such employment benefits;
  i. Husband's contributions and money paid toward the rental properties while Wife was in Florida;
  j. Wife's excellent standard of living, while Husband's standard of living is well below that of the marriage; and
  k. The tax ramifications of Husband's sale of the parties' rental properties, which will yield capital gain tax liability.

Proper consideration of the above-referenced equitable distribution factors supports a [] 60% division of marital assets to Husband.

V.  The trial court erred in its discretion, and/or as a matter of law, in its analysis and application of the alimony factors under 23 Pa. C.S. § 3701(b)(1), (b)(2), (b)(3), (b)(6), (b)(9), (b)(13), (b)(16), and (b)(17), as well as the duration of alimony under § 3701(c), based on the following:

a.  Wife earns substantially more money than Husband;
b.  Wife is in good health while Husband has a serious health problem;
c.  Wife has 2 401(k)s, stock options, and health insurance through employment, while Husband has no retirement benefits and no post-divorce health insurance through employment;
d.  Husband's contributions to Wife's increased education;
e.  Husband's limited education and age make it virtually impossible for him to find employment outside of construction;
f.  Husband's need for income and post-divorce health insurance;
g.  The equitable distribution award to Husband of certain rental properties does not provide him with enough income to meet his reasonable needs, especially with the properties being in substantial disrepair;
h.  Husband cannot maintain himself financially without assistance from Wife; and
i.  Financial assistance at the current APL rate of [] $2,320.29 [] until age 65 is warranted and just under the circumstances.

VI.  The trial court erred in its discretion, and/or as a matter of law, in finding Husband's income to be [] $72,590.00 [], as the trial court's interpretation of Husband's 2021 federal income tax return was erroneous. Husband's income should have been calculated for purposes of equitable distribution, alimony, and [] APL [] at [] $28,974.00 [] per his 2021 federal income tax return.

- 5 -

VII. The trial court erred in its discretion, and/or as a matter of law, in determining that Husband pay Wife the sum of [] $5,000.00 [] in legal fees, as there was absolutely no basis for this award in the court record.

VIII. The trial court erred in its discretion, and/or as a matter of law, in not determining that Husband receive at least a 60% award of his attorney's fees as a result of the prosecution of the parties' divorce, as there is a substantial disparity in earnings between Husband and Wife, and Husband has had to borrow money from family members in order to sustain himself during the litigation.

IX. The trial court erred in its discretion, and/or as a matter of law, in its findings under paragraph 25(c) and in paragraph 25(d) as they relate to the 2005 Honda Civic, 2002 Jeep Wrangler, 2005 GMC Sierra pickup truck, 2003 Ford E-350 van, 2004 Chevrolet Express 2500 van, and Husband's trailer, as all of the vehicles are not in existence or are not operational and should have been assigned a value of zero ($0.00). Husband's trailer referenced in paragraph 25(d) of the court's report should have been valued at [] $25.00 [], instead of [] $2,500.00 []..

X. The trial court erred in its discretion, and/or as a matter of law, in not addressing and accepting Husband's Airbnb daily rate of [] $356.00 [] per night and not awarding Husband a credit in the amount of [] $177,444.00 [] for the projected Airbnb rental income not realized because of Wife's conduct in moving to Florida and residing in the Florida [Property] full-time, as opposed to the parties' agreement to use the Florida [Property] primarily as an Airbnb.

XI. The trial court erred as a matter of law, and/or in its discretion, in its APL award of July 3, 2024, as there was no basis to award Wife a [] 20% deviation downward from the guideline support amount under Pa. R.C.P. 1910.16-5.

XII. The trial court erred in its discretion, and/or as a matter of law, in determining that Husband owes Wife any amount of money before the offset in the nature of credits, as the testimony of record and the aforementioned analysis of all of the equitable distribution factors warrants a conclusion that Wife owes Husband money under the equitable distribution analysis.

- 6 -

Husband's Br. at 31-37 (some capitalization omitted).

It is well established that our standard of review for a challenge to an equitable distribution order is limited, and this Court will not reverse an award of equitable distribution absent an abuse of discretion. *Lee v. Lee*, 978 A.2d 380, 382 (Pa. Super. 2009). "In addition, when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate economic justice[.]" *Id.* (citation omitted). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence" that the trial court misapplied the law or failed to follow proper legal procedure. *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (citation omitted). In addition, "the finder of fact is free to believe all, part, or none of the evidence[.]" *Lee*, 978 A.2d at 382 (citation omitted). Notably, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." *Brubaker v. Brubaker*, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted).

In fashioning an equitable distribution award, the trial court is required to consider, at the very least, the enumerated factors set forth in 23 Pa.C.S. § 3502(a)(1)-(11). *Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005). However, this Court has noted that, "[t]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case." *Id.* (citations omitted). "The list of factors [enumerated in Section 3502(a)] serves as a guideline for consideration, although the list

is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions." *Id.* (citations omitted). "The trial court has the authority to divide the award as the equities presented in the particular case may require." *Childress v. Bogosian*, 12 A.3d 448, 462 (Pa. Super. 2011) (citations omitted).

This Court "do[es] not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor." *Id.* (citations omitted). Rather, it is well-settled that we "must consider the distribution scheme as a whole." *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009). "We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Id.* (citation omitted).

* * *

In his first issue, Husband avers that the trial court erred when it found the pole barn to be marital property worth $163,500.00. Husband's Br. at 38. Husband argues that the pole barn is not marital property or, in the alternative, if it is marital property its value should be zero. *Id.* To support his argument, Husband asserts that he refinanced his own home to pay approximately $90,000 for the pole barn, his brother constructed it for no labor costs, it is on his parents' property, the parcel of land where it is constructed will not be conveyed to him, to disassemble the pole barn would

result in valueless materials, and he does not currently use the pole barn but his brother does. ***Id.*** at 39-43.

With respect to Husband's assertion that the pole barn is not marital property, we observe that the failure to raise an issue in the exceptions to a hearing master's recommendation constitutes waiver of that issue on appeal. Pa.R.Civ.P. 1920.55-2(b) (explaining that matters not covered by exceptions are deemed waived); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Cook v. Cook***, 186 A.3d 1015, 1024-25 (Pa. Super. 2018) (collecting cases for the principle that an issue not included in exceptions to the master's report are waived). Here, Husband failed to include this challenge in his exceptions and, therefore, failed to preserve this issue for our review. ***See*** Husband's Exceptions, 3/11/24, at ¶¶ 1-47.

Husband next challenges the valuation of the pole barn. "The Divorce Code does not specify an asset valuation method, and therefore the trial court must rely on its own discretion." ***Brubaker v. Brubaker***, 201 A.3d 180, 185 (Pa. Super. 2018). "The trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." ***Id.*** Moreover, "[i]n determining a valuation date, the trial court must choose a date which best works economic justice between the parties." ***Id.*** (citation and internal quotation marks omitted).

Instantly, Wife submitted an appraisal stating the pole barn was worth $218,000.00. Husband did not submit an appraisal. After the special master

noted that "any purchaser of this building who is not an immediate member of the Young family would either need to work out an agreement for rental with [Husband]'s parents, or would need to arrange to dismantle the building and rebuild it on another property[,]" the special master discounted the value by 25% to $163,500.00. Report, 2/20/24, at 18. We discern no abuse of discretion in the court's accepting the valuation recommended by the special master.

* * *

In Husband's second issue, he challenges the valuation of the Florida Property. Husband's Br. at 44. Husband argues that the 2023 appraised value of $850,000.00 effectuates economic justice, and that the record does not support the finding that Wife increased the value of the Florida Property by $35,000.00 after separation so as to support the special master's lowering the value of the Florida Property to $815,000.00. *Id.* at 45-46.

Our review of the record belies Husband's claims. Both parties submitted appraisals of the Florida Property and the special master accepted Husband's 2023 appraisal, which valued the Florida Property the highest. Wife submitted exhibits without objection demonstrating that she made post-separation improvements to the home in the amounts of $73,950.00 to install a new dock and $4,553.30 for electrical work. Wife's Exs. D-7A, D-7B. Wife requested a dollar-for-dollar reduction of the overall value of the Florida Property based on those post-separation improvements, and the special master declined to do so. Instead, the special master recognized that: "closer

review of the comparable sales shows that the value adjustment in the 2023 appraisal states that the dock was incomplete at that time, and this caused a downward adjustment to the comparable sales. So when the new dock was completed, the property would be worth even more than $850,000.00." Report at 16-17. The special master also considered that market conditions were improving and comparable properties were selling for more in 2023 than in 2021. *Id.* at 17. The special master noted that the Florida Property's appraisal value increased by $85,000.00 from 2021 to 2023, and this was before the new dock was installed. The special master "attribut[ed] $50,000.00 of this increase to market conditions, and the rest to Wife's improvements to the property. This would yield a market value of $815,000.00." *Id.* The record supports the master's valuation, and the court did not abuse its discretion in accepting it.

* * *

Husband next avers that the trial court erred in determining the amount of net rental income collected by Husband from the parties' rental properties from 2019 through the hearing. Husband's Br. at 47. Husband argues that the court erred when it relied on Wife's "estimated" net rental income and failed to consider the COVID-19 pandemic and post-pandemic effect of rental value. *Id.* at 49-51. Husband asserts that the net rental revenue over five years should be $26,500.00. *Id.* at 51.

Upon review, the special master accepted Wife's Exhibit 33, which provided the rental amounts for each of the properties that were charged in

2019 and continued to project that same rent to the time of the special master's hearing, allowed for taxes and insurance, and factored in the mortgage payments on the properties. Report at 19 (citing Wife's Ex. 33). Wife's Exhibit 33 demonstrated a net revenue of $125,535.44, or $26,900.45 per year. Wife's Ex. 33. The special master analyzed Husband's tax return and deducted expenses for "unknown supplies" to come to a similar figure:

> The average of the Schedule E reported net income, with-depreciation added back for 2018, 2019 and 2020, is $26,325.00. Looking at the average of 2019, 2020, and 2021, the three years of tax returns post-separation, and when adding back the unexplained "supplies" deduction, the average annual adjusted net is $25,738.00. When adding all four of the years, 2018, 2019, 2020, and 2021 with the net income as adjusted above indicate an average net per year of $26,746.00. All of these calculations are very similar to the average estimated calculation of Wife. The Master is going to utilize the average adjusted net since the date of separation for Husband to receive $25,738.00 from these properties each year for the five-year period from the date of separation of February 2019 until-the date of this Report, that would be a total of $128,690.00 in net cash income available to Husband from the various marital rental properties. Accordingly, the Master will be utilizing that value in equitable distribution.

Report at 19-20. The court was well within its discretion to accept Wife's evidence regarding the rental income, which corroborated the court's own calculations. We discern no abuse of discretion.

* * *

In his fourth and fifth issues, Husband essentially raises challenges to the weight of the evidence. Husband avers that the court failed to consider his health problems; the disparity in income, standard of living, and economic opportunity between Husband and Wife; his health insurance needs; the

conditions of the rental properties and the tax ramifications of the rental properties if Husband decides to sell them in determining both an equitable distribution and alimony award. Husband's Br. at 51-52, 58-59. In his sixth issue, Husband asserts that the court erred when it determined his income to be $72,590.00. *Id.* at 71-75.

First, Husband baldly asserts that the court should have awarded him 60% of the marital property instead of 52% of the marital property. Husband's Br. at 52. Upon review, we note that the court engaged in a proper analysis of the Section 3502 equitable distribution factors. Despite Husband's assertions to the contrary, the court did consider factors that favored a greater equitable distribution award to Husband, including the fact that Husband did not have a retirement plan, has less education than Wife, "has a significant health issue which, while it does not prevent him from working at present, it does provide some limitations on his work[,]" and earns "significantly" less than Wife. Report at 22. The court placed great weight on the short two-year length of the marriage, and concluded:

> Considering all of the facts and circumstances of this case, particularly the moderate length of the marriage, the overall size of the marital estate to be divided, the value of Husband's separate property and Wife's greater earnings, the undersigned is of the opinion that the marital estate should be divided 52% Husband — 48% Wife.

Report at 22. The record supports the trial court's finding and we decline to reweigh the evidence. Accordingly, we find no abuse of discretion.

With regards to alimony, Husband argues that the trial court miscalculated his income and failed to consider all of the Section 3701 alimony factors. Husband's Br. at 59-60, 71-25. Specifically, Husband argues that the court should have used the income listed on his 2021 tax return, $28,974.00, to determine alimony. We disagree.

In calculating Husband's income, the special master reviewed Husband's 2021 tax return which indicated that Husband made $28,974.00 but noticed an error and re-calculated Husband's income to correct the error. The special master explained:

> The 2021 tax return of Husband which reflects taxable income from Young's Masonry indicates that he only made $28,974.00 in 2021. However, it does appear clear that Husband has double-counted his labor expense, and therefore, $43,616.00 should be added to his Schedule C reported business profit. This would yield an income for the year of $72,590.00.

Report at 23. The court accepted the special master's income calculation, which the record supports, and we discern no error in this calculation.

Moreover, in determining that an award of alimony was appropriate, the court placed weight on the fact that Husband will be required to obtain health insurance for ten years until he reaches the age at which he can utilize Medicare. *Id.* at 25. The court also considered that Husband was capable of self-support through employment, that he will be able to generate income from rental properties, that the marriage was a short length, and that Husband is receiving 52% of the marital property as well as retaining separate property. *Id.* at 24-25. Accordingly, the court awarded Husband $1,000.00 per month

in alimony for 30 months. *Id.* The record supports the trial court's findings and we discern no abuse of discretion.

* * *

In issues six and seven, Husband avers that it was an abuse of discretion for the court to grant Wife's request for attorney's fees while denying his request for attorney's fees. Husband's Br. at 63-64.

Section 3702 of the Divorce Code provides that "the court may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S. § 3702(a). Moreover, 42 Pa.C.S. § 2503(7) "is a statutory provision enabling a participant to receive reasonable counsel fees when another participant engages in dilatory, obdurate or vexatious conduct during the pendency of a [divorce] matter." *Cook*, 186 A.3d at 1028 (citation omitted); *see also Busse v. Busse*, 921 A.2d 1248, 1258 (Pa. Super. 2007) (finding no abuse of discretion for award of counsel fees where husband prolonged the already extensive litigation and wife incurred counsel fees because of husband's conduct). "[T]his Court will not reverse the trial court on its decision to award counsel fees absent an abuse of discretion." *Cook*, 186 A.3d at 1028 (citation omitted).

Husband first challenges the trial court's decision to award Wife $5,000.00 in attorney's fees. To support his position, Husband baldly asserts that "there was absolutely no basis for this award in the court record." Husband's Br. at 63. Our review of the record belies this claim. Wife's motion for attorney's fees claimed that Husband was uncooperative and delayed the

- 15 -

divorce proceedings. The special master reviewed the docket and agreed, finding that "Husband has not been entirely cooperative in this case and that did cause some additional counsel fees to be incurred by [Wife]." Report at 25. As the court had a valid basis upon which to award attorney's fees, we discern no abuse of discretion.

Husband next avers that the trial court should have granted his request for attorney's fees to find "that Husband receive at least a sixty (60%) award of his attorney's fees" due to the disparity in income between Husband and Wife. Husband's Br. at 64. Husband further asserts that he "had to borrow money from family members in order to sustain himself during the litigation." *Id.*

Here, the court ordered Wife to pay Husband $2,048.18 in APL per month. One purpose of an award of APL is to enable "one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *Haentjens v. Haentjens*, 860 A.2d 1056, 1062 (Pa. Super. 2004) (citation omitted). Not only did the court award Husband APL so that he could defend himself on equal footing to Wife, the court also made a finding that Husband delayed litigation, causing Wife **and himself** to incur additional legal expenses. Accordingly, Husband's claim lacks merit.

* * *

In his ninth issue, Husband avers that the trial court erred in its valuation of various vehicles. Husband's Br. at 69. Husband argues that the

- 16 -

trial court should have accepted his valuation of these "junk or *de minimis* assets" instead of Wife's valuation. *Id.* at 70. As stated above, "[t]he Divorce Code does not specify an asset valuation method, and therefore the trial court must rely on its own discretion [and] may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." *Brubaker*, 201 A.3d at 185. Here, for each vehicle, the court had discretion to either accept Husband's own inventory value or the blue book value from Wife's submitted exhibits. We find no abuse of discretion.

* * *

In his tenth issue, Husband avers that the court abused its discretion when it failed to award him rental credit in the amount of $177,444.00 for the projected Airbnb rental income "not realized because of Wife's conduct in moving to Florida and residing in the Florida home full-time, as opposed to the parties' agreement" to utilize the Florida Property as a rental property. Husband's Br. at 76.

The trial court did not err in failing to accept Husband's hypothetical projected Airbnb rental income and Husband provides no legal support for this assertion. Wife testified that she got a job offer in Florida and that she and Husband bought the Florida home so that she could live there while working in Florida. N.T. Hr'g, 10/12/23, at 220-21. Wife further testified that the plan was not to rent the home; rather, the plan was that she was going to live there while working at her new job and Husband was eventually going to join

- 17 -

her in Florida. *Id.* Husband, on the other hand, testified that he and Wife purchased the Florida Property to use for personal vacations and rental income. *Id.* at 68. The trial court was within its discretion to credit Wife's testimony, and we discern no abuse of discretion.

* * *

In his eleventh issue, Husband avers that the court erred when it awarded a 20% downward deviation in APL from the support guidelines. Husband's Br. at 80. We discern no abuse of discretion. The court considered that Wife was paying for the larger mortgage in Florida, and deviated 20% from the guidelines due to this, which is a proper consideration under the Rule 1910.16-5 support guidelines. *See* Pa.R.Civ.P. 1910.16-5 (explaining the factors that the trier-of-fact shall consider when deciding whether to deviate from the basic spousal support guidelines).

Finally, Husband argues that once this Court corrects all the errors, Wife will owe him more money. Husband's Br. at 67-68. In light of our disposition, this claim lacks merit.

* * *

In conclusion, the trial court did not abuse its discretion when it awarded 48% of the marital property to Wife and 52% of the marital property to Husband. Moreover, we discern no error in the court's valuation of property and income, nor in its award of APL or alimony. The record supports the trial court's conclusions, and we decline to reweigh the evidence. Accordingly, we affirm the trial court's equitable distribution order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2025